IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD KOOKER, Derivatively on Behalf of HECLA MINING COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PHILLIPS S. BAKER, JR., LINDSAY A. HALL, LAWRENCE P. RADFORD, THEODORE CRUMLEY, CATHERINE J. BOGGS, GEORGE R. JOHNSON, GEORGE R. NETHERCUTT, JR., STEPHEN F. RALBOVSKY, TERRY V. ROGERS, and CHARLES B. STANLEY,<br><br>Defendants,<br><br>and<br><br>HECLA MINING COMPANY, a Delaware corporation,<br><br>Nominal Defendant. | Civil Action No. 1:19-cv-01299-CFC |

Blake A. Bennett, COOCH AND TAYLOR, P.A., Wilmington, Delaware; Michael I. Fistel, Jr., JOHNSON FISTEL, LLP, Marietta, Georgia; Frank J. Johnson, JOHNSON FISTEL, LLP, San Diego, California

    *Counsel for Plaintiff*

William M. Lafferty, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Susan W. Waesco, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Sabrina M. Hendershot, MORRIS,

NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Robert J. Kopecky, KIRKLAND & ELLIS LLP, Chicago, Illinois; Joshua Z. Rabinovitz, KIRKLAND & ELLIS LLP, Chicago, Illinois

    *Counsel for Defendant*

# MEMORANDUM OPINION

October 27, 2020
Wilmington, Delaware

_[signature]_
COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Plaintiff Donald Kooker has filed this stockholder derivative action against certain officers and directors of nominal defendant Hecla Mining Company. D.I. 20. Hecla is a Delaware Corporation that mines precious metals. Kooker is a Hecla shareholder. There are ten individual defendants: Hecla's CEO, Phillips S. Baker, Jr.; its CFO, Lindsay A. Hall; its Senior Vice President of Operations, Lawrence P. Radford; and seven members of its board of directors.

Kooker alleges in his Amended Complaint negligence-based claims under § 14(a) of the Securities Exchange Act of 1934 (Count I) and state law claims for breach of fiduciary duties (Count II), waste of corporate assets (Count III), and unjust enrichment (Count IV). Kooker alleges that all his claims arise from Hecla's purchase of Klondex Mines Ltd., Hecla's flawed due diligence in connection with that purchase, and "the costly operational issues which were concealed by Defendants' improper public statements" after the purchase. D.I. 27 at 1.

The § 14(a) claim is based on alleged false and misleading representations made in two proxy statements that solicited stockholder votes for the reelection of directors on Hecla's board. One of the proxy statements also solicited stockholder approval of a proposed revision to Hecla's 2010 stock incentive plan. Kooker

seeks relief in the form of new director elections for his § 14(a) claim and damages for his state law claims.

Pending before me is Defendants' motion to dismiss the Amended Complaint. Defendants argue that Kooker's § 14(a) claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state claim and that the remaining state law claims should be dismissed pursuant to Rule 12(b)(1) for lack of supplemental jurisdiction. D.I. 26 at 5–16. Defendants also argue that the Amended Complaint should be dismissed under Rule 23.1 because Kooker neither made a demand on Hecla's board to file suit nor adequately alleges futility to excuse demand. D.I. 26 at 16–21.

I agree with Defendants that Kooker has failed to state a cognizable § 14(a) claim. Accordingly, I will dismiss Count I for failure to state a claim. I will dismiss the remaining counts for lack of supplemental jurisdiction and therefore do not reach the issue of whether Kooker satisfied the demand requirement of Rule 23.1.

## I.   BACKGROUND

The following facts are taken from the Amended Complaint and assumed to be true for purposes of deciding the pending motion. *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

### A. Acquisition and Operation of Klondex

On March 16, 2018, Hecla acquired Klondex for $515 million, representing a 94% premium on Klondex's stock value. D.I. 20 ¶¶ 124–25. Three days after the acquisition, Hecla's stock price dropped 13%. D.I. 20 ¶ 129.

Beginning about a year after the acquisition, Hecla began to acknowledge publicly that the Klondex precious metal mines Hecla had purchased were not meeting expectations. D.I. 20 ¶¶ 163–65. On February 22, 2019, in its 2018 Form 10-K filed with the U.S. Securities and Exchange Commission (SEC), Hecla stated: "We may not realize all of the anticipated benefits from our acquisitions, including our recent acquisition of Klondex." D.I. 20 ¶¶ 157–59. In a May 2019 press release, Hecla reported that the Klondex mines were underperforming. D.I. 20 ¶¶ 163–65. On May 10, 2019, Hecla disclosed in its Form 10-Q that Hecla was undertaking a review of its Klondex operations and "may recognize an impairment." D.I. 20 ¶ 170. In June 2019, Hecla announced that it would shut down one of the Klondex mines and lay off a quarter of its Nevada workforce. D.I. 20 ¶¶ 172–73.

### B. Hecla's Proxy Statements

Kooker alleges that the individual defendants violated § 14(a) when Hecla made false and misleading statements in two proxy statements filed with the SEC in 2018 and 2019. Hecla solicited in both proxy statements stockholder votes to

3

reelect certain board members. In the 2019 proxy statement, Hecla also solicited stockholder votes to approve revisions to the company's 2010 stock incentive plan. It is undisputed that these solicitations garnered the necessary stockholder votes to approve the reelection of the board members in question and the proposed revisions to the stock incentive plan.

Kooker alleges that Hecla made two false and misleading statements in connection with the 2018 and 2019 proxy solicitations for stockholder votes to reelect board members: (1) the "Board acts as the ultimate decision-making body of the Company on certain fundamental matters and advises and oversees senior management," D.I. 27 at 8 (quoting D.I. 20 ¶ 180); and (2) "the functions of the [Board's] Health, Safety, Environmental & Technical ('HSE&T') Committee include 'review[ing] the technical activities of the Company,' and 'mak[ing] recommendations to the Board concerning the advisability of proceeding with the exploration, development, acquisition or divestiture of mineral properties and/or operations,'" D.I. 27 at 8 (quoting D.I. 20 ¶ 182) (alterations in the original).

Kooker alleges that Hecla made the following false and misleading statements in connection with the 2019 proxy solicitation of stockholder votes to revise the company's 2010 stock incentive plan:

- "The pay-for-performance philosophy of our executive compensation programs described in this Proxy Statement plays a significant role in our ability to produce strong operating, exploration, strategic, and financial results. It

4

> enables us to attract and retain a highly experienced and successful team to manage our business. ***Our compensation programs strongly support our business objectives and are aligned with the value provided to our shareholders.***" D.I. 20 ¶ 191 (emphasis in original).

- The 2010 stock incentive plan "align[s] the interests of eligible key employees, officers, and other eligible service providers with the long-term interests of our shareholders." D.I. 20 ¶ 191 (alteration in original).

- "[D]efendant Hall was 'instrumental in managing Hecla's cash position in 2018[.]" D.I. 20 ¶ 192.

- "[D]efendant Radford '[was] successful in reorganizing new managers/employees at our Nevada operations after the acquisition,' 'established development for [the Klondex mines located at] Fire Creek,' and 'established a development plan for'" two of the Klondex mines. D.I. 20 ¶ 192 (first alteration in original; second alteration added).

*See* D.I. 27 at 11–12 (identifying above-quoted statements as the actionable false and misleading statements underlying plaintiff's securities claim).

## II. LEGAL STANDARDS

### A. Stating a Claim

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must set forth enough

5

facts, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

Plaintiffs alleging a negligence claim in securities fraud actions must also satisfy the heightened pleading standards imposed by the Private Securities Litigation Reform Act (PSLRA). *In re U.S. West, Inc. Sec. Litig.*, 201 F. Supp. 2d 302, 305 (D. Del. 2002). *But see Jaroslawicz v. M&T Bank Corp.*, Civil Action No. 15-897-RGA, 2017 WL 1197716, at *3 (D. Del. Mar. 30, 2017). Section 78u–4(b)(1) of the PSLRA provides that

> [i]n any private action arising under [the Exchange Act] in which the plaintiff alleges that the defendant—
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> *the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief,*

6

> *the complaint shall state with particularity all facts on which that belief is formed.*

15 U.S.C. § 78u–4(b)(1) (emphasis added). For facts to be alleged "with particularity," the plaintiff must "plead the who, what, when, where and how: the first paragraph of any newspaper story." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (citations omitted).

Plaintiffs argue that this heightened pleading standard applies only to § 14(a) claims that sound in fraud as opposed to negligence. But the text of the statute is unambiguous; it expressly provides that it applies "[i]n *any* private action arising under" the Exchange Act. 15 U.S.C. § 78u–4(b)(1) (emphasis added).

B.   **Supplemental Jurisdiction**

A federal district court has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). For the district court to exercise supplemental jurisdiction over state law claims, (1) "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court," (2) "[t]he state and federal claims must derive from a common nucleus of operative facts," and (3) "the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995) (citations omitted). The district court has discretion to decline to exercise supplemental jurisdiction if the

7

state claims are novel and complex, if the state claims predominate over the federal claims, or if the court has dismissed the federal claims. 28 U.S.C. § 1367(c)(1)–(3). Finally, the court may decline to exercise supplemental jurisdiction in light of considerations of "judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (citation omitted).

### III. DISCUSSION

#### A. The § 14(a) Claim

Section 14(a) of the Exchange Act prohibits soliciting a shareholder's vote "in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78n(a)(1). SEC Rule 14a-9 implements § 14(a). Rule 14a-9 prohibits the solicitation of a shareholder's vote through a communication "containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a). Thus, to establish that a proxy violates § 14(a), the plaintiff must prove (1) that the proxy contained a false or misleading statement; (2) that the misstatement was material; and (3) that the misstatement caused the plaintiff injury. *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007). Negligent issuance of a materially misleading proxy statement

8

is actionable under § 14(a). *Gould v. Am.-Hawaiian S.S. Co.*, 535 F.2d 761, 777 (3d Cir. 1976).

Defendants argue that Kooker has failed to allege a negligence-based violation of § 14(a) because he does not adequately allege a materially false or misleading statement.[1] I agree with Defendants. The Amended Complaint fails to state a cognizable § 14(a) claim because the challenged proxy statements are neither misleading nor material.

### 1. Whether the Challenged Statements Were Misleading

Kooker alleges that Hecla made two misleading statements in connection with its solicitation of votes for the election of Hecla directors in 2018 and 2019. The first statement is that the "Board acts as the ultimate decision-making body of the Company on certain fundamental matters and advises and oversees senior management." D.I. 27 at 8 (quoting D.I. 20 ¶ 180). The second statement is that the functions of the Board's HSE&T committee "include 'review[ing] the technical activities of the Company,' and 'mak[ing] recommendations to the Board

---

[1] Defendants also argued in their opening brief filed in support of their motion that to the extent the § 14(a) claim seeks damages it fails as a matter of law for failure to allege transaction causation. D.I. 26 at 10–12. In his answering brief and at oral argument, however, Kooker clarified that he seeks by his § 14(a) claim only new elections for the directors' positions filled in the 2018 and 2019 reelections and the costs associated with new elections were the Court to order them. D.I. 27 at 11. Defendants do not dispute that Kooker has alleged transaction causation to the extent he is challenging the directors' reelections.

9

concerning the advisability of proceeding with the exploration, development, acquisition or divestiture of mineral properties and/or operations.'" D.I. 27 at 8 (quoting D.I. 20 ¶ 182) (alterations in the original).

These statements do nothing more than recite the directors' responsibilities. Kooker does not allege that either statement inaccurately described the directors' responsibilities. Instead, he argues that a reasonable investor would have been "misled [by the statements] into believing that the Committee and the Board had done their job which, after all, would be the measure for whether Board members deserved reelection." D.I. 27 at 8. By the phrase "had done their job," Kooker means that the directors in question "adequately overs[aw] or evaluate[d] the Klondex acquisition on an informed basis." D.I. 27 at 8.

The alleged misleading statements, however, do not state or suggest that the directors up for reelection adequately oversaw or evaluated the Klondex acquisition on an informed basis. And, in any event, Kooker does not allege with particularity that any of those directors failed to adequately oversee or evaluate the Klondex acquisition. At most, the Amended Complaint alleges flaws in *Hecla's* evaluation and acquisition of Klondex.[2] But Kooker does not connect any of these

---

[2] Kooker argues that "[f]acts supporting an inference of a lack of oversight and failure to act on an informed basis include that *the Company* hired its financial advisors just two days prior to making a $630 million offer, *Hecla's* initial due diligence failed to expose the impairment of the Fire Creek mine, *Defendants* pushed forward to quickly close the acquisition notwithstanding its previous due

10

allegations to the individual directors who were up for reelection. He does not allege that those directors were involved in the due diligence of Klondex, let alone how they responded to any information presented to them about Klondex or why they approved the Klondex acquisition. In short, Kooker does not allege the who, what, when, where, and how to satisfy the particularity standard of the PSLRA. Accordingly, to the extent Kooker's § 14(a) claim is based on statements made to solicit votes for the reelection of the directors, it fails to meet the pleading standard of the PSLRA. *See In re Paypal Holdings, Inc. S'holder Derivative Litig.*, Case No. 17-cv-00162-RS, 2018 WL 466527, at *4 (N.D. Cal. Jan. 18, 2018) (collecting cases wherein statements about business practices, transparency, governance, and corporate values were "too general to give rise to any particular impression about [defendant's] business practices . . . and therefore [were] not actionable as a matter of law").

Kooker alleges that the 2019 proxy statement's disclosures relating to the 2010 stock incentive plan were misleading because Hecla's "executive

---

diligence failure, and *the Company* did not fully understand the issues with the Nevada mines prior to the purchase." D.I. 27 at 8–9 (emphasis added) (internal citations omitted). He also alleges that "*management* admitted that *Hecla* purchased Klondex without regard to the price paid." D.I. 27 at 9 (emphasis added). He does not allege anywhere in the Amended Complaint facts from which it could be inferred that the six directors up for reelection failed to comply with their alleged oversight and evaluation responsibilities.

11

compensation programs" (plural) did not "strongly support [the Company's] business objectives" and the 2010 stock incentive plan "did not effectively align the interests of management and stockholders." D.I. 27 at 12 (citations omitted). He further argues that the challenged statements misleadingly "claim[ed] that Hall and Radford met performance goals." D.I. 27 at 12. But here again Kooker does not allege particularized facts from which it could be inferred that these statements were misleading.

Kooker alleges specifically that the 2019 proxy's statements about Hecla's executive compensation programs were misleading because "management was incentivized to put the short-term interests of the Company (and their own interests) ahead of what was best for the Company in the long-term." D.I. 20 ¶ 193. The Amended Complaint, however, does not allege that any executive compensation program other than the 2010 stock incentive plan aligned management's interests with the long-term interests of Hecla or its shareholders. And, as the 2019 proxy itself disclosed, the 2010 plan expressly allowed for awards to management to "provide stock-based incentives that promote the Company's *short and long-term* financial growth and stability." D.I. 26-2 at 92 (emphasis added).

Kooker also alleges specifically that the proxy statement's representations regarding Hecla's executive compensation plans were misleading because the

12

plans did not "in any way de-incentivize management from knowingly overpaying for the [Klondex] Operations without regard[ ] to the effect such overpayment would have on Hecla's business as a whole." D.I. 20 ¶ 193. But he can point to no factual allegation in the Amended Complaint to support this conclusory assertion.

Finally, although Kooker alleges that the 2019 proxy statement misleadingly "claim[ed] that Hall and Radford met performance goals," the Amended Complaint does not identify such goals; nor does it allege that Hall or Radford satisfied any performance criteria, let alone that they received an award under an employee compensation plan because of their performance. With respect to Hall, the Amended Complaint takes issue with the statement in the 2019 proxy that he was "instrumental in managing Hecla's cash position in 2018." D.I. 20 ¶ 192. The 2019 proxy, however, did not state that Hall had—let alone that he had met—a performance goal related to Hecla's cash position; and Kooker does not dispute that Hall was instrumental in managing Hecla's cash position. With respect to Radford, the 2019 proxy stated that he "[was] successful in reorganizing new managers/employees at our Nevada operations after the acquisition," "established development for [the Klondex mines located at] Fire Creek," and "established a development plan for" two of the Klondex mines. D.I. 20 ¶ 192 (first alteration in original; second alteration added). None of these statements speak to the financial success of the Klondex mines, and thus even accepting as true Kooker's allegation

13

that "in 2018 the Nevada Operations were known to be an unmitigated disaster," D.I. 20 ¶ 192, the 2019 proxy's challenged statements about Radford were not misleading.

Because none of the challenged statements in the 2018 and 2019 proxies were misleading, I will dismiss Kooker's § 14(a) claim.

### 2. Whether the Challenged Statements Were Material

Kooker's § 14(a) claim warrants dismissal for the additional reason that the challenged statements are not material under the federal securities laws. "[A]llegations of failure to disclose mismanagement alone do not state a claim under federal securities law." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 639 (3d Cir. 1989). Accordingly, unless it involves self-dealing or breach of trust, "director misconduct of the type traditionally regulated by state corporate law need not be disclosed in proxy solicitations for director elections." *Gaines v. Haughton*, 645 F.2d 761, 779 (9th Cir. 1981), *overruled on other grounds by In re LifeLock, Inc. Sec. Litig.*, 690 F. App'x 947 (9th Cir. 2017).

Although Kooker does not allege self-dealing or breach of trust here, he insists that the challenged statements in the two proxies "go beyond the failure to disclose breaches of fiduciary duty." D.I. 27 at 7. But for every statement he challenges, Kooker argues that the statement is misleading because it failed to disclose director mismanagement. In Kooker's words, "investors were misled into

14

believing that the [HSE&T] Committee and the Board had done their job," when in fact, they "did not adequately oversee or evaluate the Klondex acquisition on an informed basis." D.I. 27 at 8. Thus, Kooker is alleging that the challenged statements were misleading because they did not disclose that the directors had failed to perform their oversight and due diligence responsibilities. For that reason, the challenged statements, even if deemed to be misleading for lack of disclosure, are not actionable under § 14(a).

### B. State Law Claims

Kooker does not oppose Defendants' request that I decline to exercise jurisdiction over his state law claims in the event I dismiss the § 14(a) claim. Accordingly, I will exercise my discretion and decline to exercise supplemental jurisdiction over Kooker's state law claims. *See* 28 U.S.C. § 1367(c)(3).

### IV. CONCLUSION

For the foregoing reasons, I will grant Defendants' motion to dismiss the Amended Complaint.

The Court will issue an Order consistent with this Memorandum Opinion.